IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:20CR191** |
| vs. | |
| GREGORY NEEMANN, | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter comes before the Court on Defendant's, Gregory Neemann's, motion to vacate his conviction and sentence under 28 U.S.C. § 2255. Filing No. 203. Two of Neemann's claims survived initial review, and the Court directed the government to file a reply. Filing No. 207. In its reply, the government opposed Neemann's motion and asserted that no evidentiary hearing was necessary. Filing No. 225. The government also submitted an index in opposition to the motion, consisting of the government's letter extending a plea offer to Neemann; the plea offer itself; a letter explaining the lack of dashcam footage of Neemann's traffic stop; a letter from John Berry, Jr., Neemann's court-appointed attorney, to Neemann detailing a conversation about pleading guilty; affidavits from Berry and his co-counsel, Matthew Knipe; an affidavit and warrant to search Neemann's home date March 12, 2020; and police reports about the traffic stop Neemann contends should have been suppressed. Filing No. 226.

For the reasons set forth herein, the Court dismisses Neemann's claim that he received ineffective assistance of counsel for not being advised that he could plead guilty without a plea agreement. The Court grants the motion for an evidentiary hearing on his claim that counsel was ineffective for failing to file a motion to suppress.

1

I.      BACKGROUND

A search warrant was issued for Neemann's house on South 14th Street on March 12, 2020, and among the property listed as evidence to be found at that location was Neemann's person.  Filing No. 226-7 at 1.  As police were preparing to execute the warrant the next day, Detective Troy Liebe observed Neemann leaving the residence with a woman.  Filing No. 226-8 at 2.  Detective Liebe followed the two and reportedly witnessed Neemann turn onto 13th Street without signaling.  Filing No. 226-8 at 2.  He then directed two other detectives, Matthew Stigge and Emilio Luna, to conduct a traffic stop. Filing No. 226-8 at 2.  Detective Liebe further instructed Detectives Stigge and Luna to search Neemann in accordance with the warrant.  Filing No. 226-8 at 2.

Neemann asserts that when officers approached his car, they informed him that the reason for the stop was to execute the warrant at his house several blocks away. Filing No. 204 at 10.  While Neemann the search warrant was the "SOLE justification" for the stop, with no mention of the traffic violation.  Filing No. 204 at 11.  No external evidence of the missed turn signal exists; the wrong dashcam video was initially provided to the defense, and the correct dashcam footage was destroyed according to department policy before the error was discovered.  Filing No. 226-3.

When Detectives Stigge and Luna searched Neemann's person, they found baggies containing suspected marijuana and methamphetamine and $2,363 in cash. Filing No. 226-8 at 2.  All told, officers found about 400 grams of methamphetamine and additional paraphernalia from Neemann's person and car.  Filing No. 226-8 at 2–3.  These illicit substances were part of the basis for the charges in the present case.  Filing No. 1.

2

Neemann was indicted along with a co-defendant on July 24, 2020. Filing No. 1. He was charged with conspiracy to distribute 500 grams or more of a mixture containing methamphetamine and possession with intent to distribute 50 grams or more of actual methamphetamine. Filing No. 1. Those charges each carried a mandatory minimum of ten years without a criminal history enhancement. 21 U.S.C. § 841(b)(1)(A). After his first appointed counsel withdrew due to a conflict of interest, the Court appointed John S. Berry, Jr., to represent Neemann on September 4, 2020. Filing No. 40. Shortly thereafter, Berry's associate, Matthew Knipe, filed an entry of appearance as co-counsel. Filing No. 46.

On November 4, 2020, the government offered a plea deal wherein it would agree to recommend a sentence of 144 months' imprisonment and would abstain from filing an enhancement under 21 U.S.C. § 851 based on Neemann's prior drug conviction. Filing No. 226-1 at 1. The government's offer did not include a formal deadline, but in an accompanying letter detailing the prior conviction, the Assistant U.S. Attorney ("AUSA") noted "it is important that it be executed and returned to my office by close of business on November 13, 2020. Its viability may otherwise be overcome by events." Filing No. 226-1 at 1. In his affidavit filed in opposition to the present motion, co-counsel Knipe stated he believed this phrase referred to the anticipated filing of the enhancement. Filing No. 226-6 at 2. After the deadline was extended several times, the offer was ultimately rejected. Filing No. 226-6 at 3–4. A Superseding Indictment with the § 851 enhancement was filed on January 21, 2021. Filing No. 65 at 2.

Neemann alleges he did not have the opportunity to speak with his (new) court-appointed counsel, John Berry, Jr., until February 2, 2021, at what he believed would be

3

a detention hearing.[1]  Filing No. 204 at 3.  However, he acknowledges speaking to Berry's "assistant," Knipe, who was in fact co-counsel.  Filing No. 204 at 4–5, *see also* Filing No. 226-6 at 3 ¶ 9.

Neemann further alleges that he was not advised of the possibility of pleading to the counts as charged without an agreement, Filing No. 204 at 8, and further argues that there were six months between the filing of original indictment and the superseding indictment in which he could have pled guilty to the counts as charged in the original indictment in order to prevent the filing of an enhancement.  *Id.* at 4–5.

Neemann also contends that, despite his urging, counsel did not file a motion to suppress the traffic stop, nor was the issue properly investigated.  Filing No. 204 at 10.

Neemann ultimately pled guilty to the Superseding Indictment without an agreement on December 10, 2021.  Filing No. 133, Text Minute Entry.  Neemann alleges that Knipe informed him that he would fall within one of three sentencing ranges, two of which were below the mandatory minimum of 180 months due to the enhancement.  Filing No. 204 at 5.  Berry, in a letter to Neemann dated August 6, 2021, summarizing a recent conversation, reiterated Neemann's unwillingness "to accept a 15 year sentence."  Filing No. 226-4 at 1.  Neemann also indicated on his petition to enter a guilty plea that the mandatory minimum with the enhancement would be 15 years.  Filing No. 134 at 4.[2]  On March 11, 2022, Neemann was given 180-month sentences on both counts, to be served concurrently.  Filing No. 163 at 2.

---

[1] The hearing referenced was actually Mr. Neemann's Arraignment on Superseding Indictment (with a detention hearing) and took place on February 4, 2021.  Filing No. 75.

[2] At sentencing, the Court rejected the argument that the convictions justifying the enhancement did not apply.  Filing No. 185 at 49:20–21.

Neemann's appeal challenging the application of the enhancement and the calculation of drug quantity, as well as alleging a violation under *Brady*, was denied under plain error review on November 28, 2022. Filing No. 199 at 2, *Brady v. Maryland*, 373 U.S. 83 (1963). The Eighth Circuit found that by pleading guilty, Neemann waived his claim that the filing of the enhancement was retaliatory, and it further noted that claims of ineffective assistance of counsel, including his *Brady* claim, should be addressed in a post-conviction proceeding. Filing No. 199 at 2.

Neemann subsequently filed a pro se motion on February 20, 2024, to vacate for ineffective assistance of counsel under 28 U.S.C. § 2255 and requested appointment of counsel. Filing No. 203 at 13. The Court conducted an initial review and dismissed two of his four claims, appointed counsel, and directed the government to respond. Filing No. 207 at 9–10. The government responded and requested the Court to rule on the remaining two claims without an evidentiary hearing. Filing No. 225 at 1.

## II.   ANALYSIS

On a motion to vacate under 28 U.S.C. § 2255, an evidentiary hearing is preferred. *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013). An evidentiary hearing may be denied if "the motion, files and record of the case conclusively show that the petitioner is not entitled to relief." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). In considering the record to determine if an evidentiary hearing is required, the petitioner's allegations are to be accepted as true unless they are contradicted by the record or too incredible to be accepted. *Id.*

The ultimate burden of proving ineffective assistance of counsel belongs to the petitioner. *United States v. White*, 341 F.3d 673, 678 (8th Cir. 2003). However, a pro se,

5

imprisoned petitioner should not be required to prove those allegations without an evidentiary hearing unless affidavits are provided that "conclusively prov[e] their falsity." *Blackledge v. Allison*, 431 U.S. 63, 70–71 (1977). Moreover, courts should read pro se petitions generously in the interests of substantial justice. *See Miller v. Kemna*, 207 F.3d 1096, 1097 (8th Cir. 2000) (citing *Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996)). A generous reading does not require inventing a claim for a petitioner, but nor should the court allow its reading "to trap a petitioner who has poor drafting skills." *Mack v. Caspari*, 92 F.3d 637, 640 (8th Cir. 1996) (quoting *Schneider v. Delo*, 85 F.3d 335, 339 (8th Cir. 1996)).

In order to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate both deficiency and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficiency is judged by an objective standard of reasonableness, but counsel's tactical decisions are given deference. *Id.* at 688–89. As such, there is a strong presumption that counsel's decisions are "within the wide range of reasonable professional assistance." *Id.* at 689. That presumption protects mistakes of judgment but requires that counsel make a thorough investigation before making a tactical decision. *Thomas*, 737 F.3d at 1207. A less thorough investigation is acceptable if "reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 691. Prejudice requires the petitioner to show a reasonable probability that the result of the proceeding would have been different if not for counsel's deficiency. *Id.* at 694. Both prongs must be satisfied, and the Court need not consider both if one is lacking. *Id.* at 697.

**A. Counsel's Failure to Advise Neemann About the Possibility of Pleading Guilty Without an Agreement**

Neemann first argues that his counsel was ineffective for failing to advise him that he could plead guilty to the counts as charged to avoid the government filing the Superseding Indictment with the § 851 enhancement. Filing No. 204 at 7. The government counters that it could have filed an information with an enhancement at any time "before trial or before the entry of a plea of guilty" and still complied with § 851. Filing No. 225 at 9, citing 21 U.S.C. § 851(a)(1).

Neemann argues that he could have had multiple opportunities to plead guilty to the charges in the indictment before the government filed the Superseding Indictment. His first opportunity, he claims, was with his first court-appointed counsel; claiming she could have suggested he plead guilty at his initial appearance. Filing No. 204 at 2. A guilty plea at that time, however, could be constitutionally suspect. Additionally, the Court could have refused to accept such a guilty plea, at least until Neemann had meaningfully consulted with his counsel, who was appointed at the same time. As such, his first appointed attorney's failure to disclose that option immediately upon her appointment is not ineffective assistance.

A defendant may enter a guilty plea without the prior consent of the government or the court if there is no agreement. *Compare* Fed. R. Crim. P. 11(a)(1) *with* Fed. R. Crim. P. 11(c)(3)(A) (distinguishing pleas which the defendant may enter at will from those that require the court's consent to enter). While defendants are entitled to plead guilty to the charges in the indictment, a guilty plea entered at an initial appearance is subject to greater scrutiny. *Compare* Sanders v. United States, 373 U.S. 1, 22 (1963) (casting doubt on a guilty plea entered without counsel on an initial appearance and stating it is not

7

entitled to the same "presumption of adequacy" as a normal case), *with Iowa v. Tovar, 541 U.S. 77, 91–92 (2004)* (upholding a guilty plea made pro se in an initial appearance). The American Bar Association also warns courts about accepting a plea of guilty in an initial appearance, especially from defendants without counsel or from those who have not had meaningful time to consult with counsel, and it specifically recommends imposing a "reasonable time for deliberation" prior to accepting an un-counseled guilty plea. ABA Standards for Criminal Justice, § 14-1.3 (3rd Ed. 1999); *see also Meyer v. United States, 424 F.2d 1181, 1191 (8th Cir. 1970)* (upholding a guilty plea because the court continued the proceedings for a week to allow the defendant to consult with counsel, where the record showed the defendant hoped to plead guilty immediately so he could have it vacated later or to avoid a transfer of the case to another district where he feared more charges would be brought).

The second opportunity Neemann argues he should have been advised he could plead guilty to the charges in the indictment, came after the government had extended a plea offer. Filing No. 204 at 3–4. Neemann argues that he could have pled guilty *without* an agreement at that time, which would have both forestalled the filing of the enhancement and allowed him to receive a potentially lower sentence because the mandatory minimum without the enhancement was less than the sentence the government offered in the plea offer (ten years versus twelve years). *See* Filing No. 204 at 5. By that time, Berry and Knipe[3] had replaced the Federal Public Defender as

---

[3] Neemann also argued that he did not have the opportunity to meet with his court-appointed attorney, i.e. Berry, before the Superseding Indictment was filed. Filing No. 204 at 3. Because he met with Berry's co-counsel, Knipe, failure to meet in person with his primary counsel would not violate the Sixth Amendment. However, Neemann also refers to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, and argues this precludes a court-appointed attorney from delegating his representation to co-counsel. Filing No. 204 at 3. This is not so.

Neemann's court-appointed counsel. Filing No. 40; Filing No. 46. Knipe claims that he discussed the offer in person with Neemann multiple times as well as discussed it with him over the phone. Filing No. 226-6 at 3. He did not recall specifically discussing the possibility that Neemann could plead guilty without an agreement, but it was Knipe's understanding that the government would be able to file the enhancement any time before a change of plea hearing or trial, and the government's agreement to *not* file the enhancement was contingent on Neemann accepting the plea agreement offer. *Id.*

The government is entitled to file an information with an enhancement for prior convictions "before entry of a plea of guilty." 21 U.S.C. § 851(a)(1). The Federal Rules of Criminal Procedure use the verb "enter" to describe both a defendant's verbal plea in open court and a court's judgment upon accepting the plea. *Compare* Fed. R. Crim. P. 11(a), *with* Fed. R. Crim. P. 11(b)(3). Other jurisdictions have held that a defendant's plea is entered when it is "put formally before the court," and even if the court does not immediately accept the plea, it binds the defendant. *State v. Nicholas*, 924 N.W.2d 286, 292 (Minn. Ct. App. 2019) (quoting *Black's Law Dictionary* 648 (10th ed. 2014)). If the government is also bound by a plea "put formally before the court," presumably requiring

---

"A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings." 18 U.S.C. § 3006A(c). The statute's guidelines on compensation permit a law firm or community defender organization to be compensated, beyond merely the individual employee, which implies that other attorneys within the firm may assist. 18 U.S.C. § 3006A(d)(1).

The CJA itself does not require that the specific attorney appointed by the Court represent the defendant at every stage nor does it specifically require the court-appointed attorney to attend every meeting with the defendant, merely that he be represented. Knipe entered his appearance as co-counsel just eight days after Berry was appointed. Knipe's entry indicated he was working as co-counsel along with Berry and noted he would not be separately compensated. Filing No. 46 at 1. Berry's delegation of client meetings to his co-counsel did not violate the CJA and was not ineffective assistance of counsel.

a verbal pronouncement rather than merely a request for a change of plea hearing, it is possible a later information could be filed.

The purpose of the requirement to file an enhancement before the defendant enters a guilty plea, however, is to give the defendant notice that satisfies constitutional due process so that he can consider the implications of the prior conviction while making strategic decisions in his defense. *United States v. Johnson*, 462 F.3d 815, 823 (8th Cir. 2006). The notice requirement is also intended to give the defendant an opportunity to prepare to dispute the prior conviction before sentencing. *United States v. Higgins*, 710 F.3d 839, 844 (8th Cir. 2013). While § 851 requires the government to file a written information before the defendant's guilty plea is entered, courts do not read the statute hyper-technically, and sufficient notice may remedy the lack of a written information. *United States v. Johnson*, 462 F.3d at 823–24 (suggesting plea negotiations gave constitutionally required notice of the government's intent to rely on previous convictions and refusing to "place form over substance" for § 851 issues).

The Eighth Circuit further considered the technical requirements of the statute in *United States v. Curiale*, 390 F.3d 1075, 1076 (8th Cir. 2004) (per curiam). The government did not file a § 851 information until the day of Curiale's plea hearing, after he had reached a plea agreement. *Id.* The Eighth Circuit denied Curiale's appeal, reasoning that he had the constitutionally required notice the statute was intended to ensure. *Id.* at 1076–77. Moreover, the Eighth Circuit found filing the information the day of the hearing, after the plea agreement was reached and presumably after Curiale petitioned the court to change his plea, was nevertheless "before Curiale's guilty plea." *Id.* at 1077.

Neemann was on notice that the government intended to file an enhancement. The plea offer extended by the government specifically included that no § 851 enhancement would be filed if he accepted, but cited the convictions on which it would rely if the offer was not accepted. Filing No. 226-1. Therefore, he had received constitutional notice of the government's intent to rely on his prior convictions, regardless of whether the information had been filed. Moreover, the government could have complied with § 851 simply by filing the information before the change of plea hearing. *See Curiale*, 390 F.3d at 1076. So, although Knipe did not specifically recall advising Neemann of the option of pleading guilty without an agreement, any such lack of advice was not deficient and did not prejudice Neemann, and therefore his first claim must fail.

**B.    Counsel Declined to File A Motion to Suppress Constituted Reasonable Professional Judgment**

Neemann next argues that he received ineffective assistance of counsel because his attorneys declined to file a motion to suppress evidence seized from his person and car following the traffic stop. Filing No. 204 at 10–11. His argument relies on *Bailey*, wherein the Supreme Court held that a search warrant for a defendant's residence does not justify seizing the defendant in a separate location. *Bailey v. United States*, 568 U.S. 186, 202 (2013). The government responds that Neemann was stopped for a traffic violation, not based on the warrant, and that even if the traffic stop were invalid, the inclusion of Neemann's person among the items to be found at his residence justified the seizure. Filing No. 225 at 11–15.

**1.  *Whether Neemann's counsel was deficient for declining to file the motion to suppress.***

Tactical decisions are entrusted to the attorney, not to the defendant. *Strickland*, 466 U.S. at 689. The defendant only has absolute authority on four choices: "whether to

11

plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Thomas v. United States*, 737 F.3d 1202, 1208 (8th Cir. 2013) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Filing a motion to suppress falls within the broad realm of an attorney's tactical decisions to which judicial scrutiny must be "highly deferential." *Strickland*, 466 U.S. at 689. As with all decisions, however, the attorney's chosen tactic must be supported by a thorough investigation or reasonable professional limitations that justify a less complete one. *Id.* at 690–91.

Neemann's motion to suppress claim is a complex one. Because the traffic stop occurred away from his house, and the detectives who stopped him—who, according to the government, did not personally see the missed turn signal—pointed to the warrant as the only justification for the stop, Neemann argues that *Bailey* makes the stop unconstitutional. The government argues that the stop was justified by the missed turn signal. Further,

> [E]ven if the warrant did not explicitly state he could be searched regardless of his proximity to the residence at the time of the search, the warrant itself led to the belief law enforcement was legally justified in detaining and searching Neemann at the outset of the traffic stop which occurred approximately a mile from the residence.

Filing No. 225 at 15, citing *United States v. Leon*, 468 U.S. 897 (1984). Because the wrong dashcam video was initially offered to the defense and the correct dashcam from the stop was destroyed, there is also a possible discovery violation, which would be governed by *Brady*. *Brady v. Maryland*, 373 U.S. 83 (1963) (government must disclose exculpatory evidence), and *Arizona v. Youngblood*, 488 U.S. 51 (1988) (failure of police to preserve evidence is denial of due process when done in bad faith).

Neemann focuses his brief on the *Bailey* claim, without direct mention to either the turn signal or the *Brady* question (although he raised the latter on appeal, and the Eighth

12

Circuit relegated it to the post-conviction context). However, he does say that the warrant was the "SOLE" justification for the stop, and, if interpreted generously, could be construed as asserting there was no turn signal violation. Such an assertion is equivalent in evidentiary weight, in reviewing the record alone, to the police reports submitted by the government, which were also unsworn. *See Roundtree v. United States*, 751 F.3d 923, 927 (8th Cir. 2014) (discussing the evidentiary weight of a lawyer's unsworn statement). Implicitly, it raises the *Brady* issue by disputing the detective's credibility, and the only external evidence to consider was inadvertently destroyed by the government.

Knipe's affidavit indicates that he personally investigated a motion to suppress the evidence from the search of Neemann's car around the same time. Filing No. 226-6 at 2. He did not discount Neemann's affirmation that the warrant was the only reason for the stop, but Knipe "believed there were likely recordings, either body-worn camera or in-cruiser camera," which would provide further evidence, including possibly justifying the traffic stop based on Neemann's failure to signal his turn. Filing No. 226-6 at 2. Knipe then sought out those recordings from the U.S. Attorney's office, but learned on December 2, 2020, that the recording(s) had been destroyed. Filing No. 226-6 at 2–3, *see also* Filing No. 58 and Filing No. 226-3. Even after learning that there was no video, Knipe discussed the issue with Neemann "half a dozen times or more" before concluding the motion to suppress would not succeed. Filing No. 226-6 at 4.

Knipe asserts his decision not to file a motion to suppress was based on the validity of the traffic stop and the existence of a warrant that included Neemann's person. Filing No. 226-6 at 4. Berry agreed, basing his assessment largely on the traffic stop and specifically asserting, "Without a video of the alleged traffic violation, we had no valid

13

evidence to refute the officer's statement that the traffic violation occurred." Filing No. 226-5 at 3. Berry also believed that other evidence of a conspiracy made the search of Neemann and his car irrelevant. Filing No. 226-5 at 3.

The attorneys' affidavits demonstrate that they conducted an investigation to determine if *Bailey* would invalidate the search. However, neither references investigation into the consequences of the destruction of the video, yet its absence is given as a reason for their decision not to file. It is also not clear from the affidavits whether Neemann's attorneys were aware there were two separate groups of officers involved in the traffic stop (the detective who observed the traffic violation and the detectives who stopped him) and whether *both* sets of dashcam videos were requested. Therefore, the overall question of whether their investigation was sufficiently thorough cannot be settled through the present record.

### a.  Good Faith Exception

When it comes to the law, an officer cannot make a reasonable mistake of a clear statute or precedent; there must be some ambiguity in the law that allows multiple interpretations, and the officer's particular interpretation must be objectively reasonable. *United States v. Forjan*, 66 F.4th 739, 746–47 (8th Cir. 2023). In interpreting a warrant, its terms are construed according to their "fair meaning." *United States v. Sturgis*, 652 F.3d 842, 844 (8th Cir. 2011) (citation omitted).

The warrant in this case reads:

[T]here is probable cause to believe that concealed on the premises located at [address] 14th Street, Omaha, Douglas County, Nebraska, . . . [there is] the following described property, to wit: . . . Methamphetamine, its derivatives and administering instruments, whether homemade or manufactured; monies and records pertaining to an illegal narcotics

operation; . . . and/or the person of Gregory A. NEEMANN . . . further described as a white male, approximately 5'9" and 180 pounds.

Filing No. 226-7 at 5.

An initial reading of this warrant according to the ordinary meaning of its words and syntax suggests that the search warrant was granted only for Neemann's house, and a search of his person was authorized if he were found within his house.  If officers were only entitled to search Neemann in the context of searching his home, it is hard to see how they could establish good faith reliance on the search warrant to seize him in a separate location, because that rationale was clearly foreclosed by Supreme Court precedent.  *See Bailey*, 568 U.S. at 202 (ruling that detention incident to a search warrant is limited to the vicinity).  The unambiguous precedent in *Bailey* precludes good faith reliance to seize a suspect elsewhere based on a search warrant for his residence.

If an officer relies in good faith on a facially valid warrant, the evidence seized contrary to the Fourth Amendment will not be suppressed at trial.  *Leon*, 468 U.S. at 922. However, good faith reliance must be objectively reasonable.  *Id.* at 922–23.  The logic behind the good faith exception is to allow use of probative evidence when it was obtained without police misconduct.  *Id.* at 921.  An officer's reliance on a warrant is not reasonable, however, if the warrant or the reliance clearly contradicts the Constitution.  *Id.* at 923.  The question of reasonable reliance is "objectively ascertainable" when considering all the circumstances.  *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (quoting *Herring v. United States*, 555 U.S. 135 (2009)).

Unlike *Leon*, the warrant to search Neemann's house passed constitutional muster, so the question is whether officers were reasonable in their interpretation of the warrant to include seizing him personally.  The government argues because the warrant

15

listed Neemann among the items they could search for *in his house*, officers could seize and search him *away from his house.* If the officers made a reasonable mistake in interpreting the warrant, and if they were entitled to rely on that mistake, then *Leon* would allow the evidence to be introduced.

The Supreme Court permits evidence gathered after an officer's reasonable mistake to be introduced against the defendant. *United States v. Houck*, 888 F.3d 957, 960–61 (8th Cir. 2018). This includes mistaken interpretations of warrants. *Houck*, 888 F.3d at 960. Any such mistakes, while arising from the subjective understanding of the officers involved, are assessed on an objective basis. *Heien v. North Carolina*, 574 U.S. 54, 66 (2014).

Berry and Knipe cite the warrant as a factor in their decision not to file a motion to suppress. Neither, however, mentions any investigation into the good faith exception or whether the government could successfully apply it to Neemann's case. The belief that the warrant would prevent a motion to suppress from succeeding could well constitute a "reasonable professional judgment" to curtail investigation into the motion to suppress. However, with only cursory mention that the warrant's existence could defeat the motion, the reasonableness of limiting the investigation is not established. Therefore, the sufficiency of their investigation is not conclusively established on the record.

### 2. Whether Neemann suffered prejudice because the motion to suppress was not filed.

Neemann argues because the seizure of his person and search of his car was conducted in violation of *Bailey*, the evidence should have been suppressed. Filing No. 204 at 19. The government contends even if the motion had been filed, the missing video would be irrelevant because the detectives had a warrant which mentioned Neemann

personally among the items to be searched, and therefore they could rely in good faith on the warrant to seize him for the search. Berry's affidavit also suggests he believed the government had plenty of other evidence of a conspiracy, so suppressing the methamphetamine seized from Neemann's person and car did not have a reasonable probability of changing the outcome.

A showing of prejudice requires a "reasonable probability" the result of the proceeding would have been different, enough probability "to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner bears the burden of demonstrating prejudice. *Id.* at 687. However, particularly for prisoners filing pro se, an evidentiary hearing is preferred to give the petitioner the opportunity to support his claim. *Blackledge*, 431 U.S. at 70–71.

A habeas corpus petitioner seeking to reverse a guilty plea may show prejudice if he can demonstrate that he would have gone to trial if not for the ineffective assistance of counsel. *Dat v. United States*, 920 F.3d 1192, 1194 (8th Cir. 2019). This must be supported by contemporaneous evidence; later statements that the petitioner would have gone to trial are not enough. *Id.* at 1195. However, the inquiry focuses on the petitioner's decision-making as a defendant. *Lee v. United States*, 582 U.S. 357, 367 (2017). The defendant's decision-making goes beyond the chances of success at trial. *Id.*

The record shows some evidence that Neemann desired a trial and that the decision not to file a motion to suppress was crucial in his decision-making. Both Knipe and Berry attest that Neemann argued vehemently for the motion to suppress to be filed as well as a variety of other motions. Filing No. 226-5 at 3; Filing No. 226-6 at 4. Neemann submitted an email from Knipe which suggested Neemann would have

17

accepted the plea deal if the dashcam footage supported officers' accounts.  Filing No. 204 at 37.  Even in his petition to plead guilty, Neemann expressed dissatisfaction that his counsel had not pursued his arguments or filed any motions.  Filing No. 134 at 2.

Berry maintains Neemann wanted him to negotiate a better plea deal rather than going to trial, but without an evidentiary hearing, the Court cannot make a decision on credibility.  *United States v. Sellner*, 773 F.3d 927, 929 (8th Cir. 2014).  While Neemann must provide contemporaneous evidence that he was inclined to go to trial, and the failure to file a motion to suppress affected his decision-making, an evidentiary hearing is warranted to examine any such evidence.

Regarding the viability of the motion to suppress, because Neemann pled guilty without a motion, there has been no development of the record regarding the application of *Bailey* or the good faith exception.  Therefore, the record does not conclusively show that the officers could have relied on the warrant to seize Neemann, so prejudice cannot be eliminated on that basis.

In sum, an evidentiary hearing is necessary to expand the factual record which, at this time, contains too many open questions.  Neemann still has the considerable burden at that hearing of demonstrating both that Berry and Knipe fell below reasonable professional judgments in their investigation of the motion and that it is reasonably probable that failure to file the motion to suppress changed the ultimate outcome of his case.  Accordingly,

IT IS ORDERED:

1) Defendant's motion to vacate his convictions, Filing No. 203, is denied as to his claim of ineffective assistance of counsel for failing to advise him to plead guilty

without an agreement.  However, the motion remains pending, and the Court will schedule an evidentiary hearing by separate order as to Neemann's claim for ineffective assistance of counsel regarding the failure to file a motion to suppress as outlined herein.

Dated this 13th day of April, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge